**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **FITZGERALD DENNISON, SR.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MARTIN J. O'MALLEY,**<br>***Commissioner of Social Security***<br><br>**Defendant.** | **No. 24-cv-2301-ZMF** |

**MEMORANDUM OPINION AND ORDER**

On September 16, 2021, Plaintiff Fitzgerald Dennison, Sr., filed for Supplemental Security Income Benefits ("SSI"). *See* Admin. R. ("AR") 151, ECF No. 5.[1] An Administrative Law Judge ("ALJ") denied his request. *See* AR 14. Plaintiff now challenges that decision, claiming that the ALJ incorrectly found that he was not disabled because the ALJ failed to properly evaluate his allegations of pain and dysfunction, and the ALJ's RFC finding was not supported by substantial evidence. *See* Pl.'s Mot. J. Reversal ("Pl.'s Mot.") 2, ECF No. 8.

After considering the parties' submissions and the Administrative Record, the undersigned recommends that the Court DENY Plaintiff's Motion for Judgment of Reversal and GRANT Defendant's Motion for Judgment of Affirmance.

---

[1] The Administrative Record contains over fifty exhibits. *See* ECF No. 5. For ease of reference, the citations to the Administrative Record will cite to the consecutive page numbers provided in the lower right-hand corner of each page.

## I.    BACKGROUND

### A.    Statutory Framework

The Social Security Act provides benefits to individuals with disabilities. *See* 42 U.S.C. § 1382(a)(1). To claim SSI, a plaintiff must prove that they are "disabled." *Id.* An individual is disabled if they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A). The impairment must render them unable to return to previous work or "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step evaluation process to determine whether a claimant is disabled, as defined by the Social Security Act. *See* 20 C.F.R. § 416.920(a). The burden of proof rests with the claimant for the first four steps, then shifts to the SSA for the last step. *See Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). At step one, the claimant must prove they are not currently engaged in a "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). At step two, the claimant must show that they have a "severe impairment" or a "combination of impairments" that "significantly limits [their] physical or mental ability to do basic work activities." *Id.* §§ 416.920(a)(4)(ii), 416.920(5)(c). At step three, the ALJ must determine whether the claimant's impairment(s) meets or is equal to one of the criteria listed in Appendix 1. *See id.* § 416.920(a)(4)(iii). If the ALJ finds that the claimant meets the requirements, then they are disabled. *See id.* If not, then the ALJ proceeds to step four. *See id.* At step four, the ALJ must decide if the claimant has the "residual functional capacity" (RFC) to perform the requirements of their "past relevant work." *Id.* §§ 416.920(a)(4)(iv), 416.920(f). Put another way, the ALJ must determine "the most [the claimant] can still do despite [their] limitations." *Id.*

§ 416.945(a)(1) (defining RFC). If the ALJ finds that the claimant has the RFC to return to their previous work, then they are not disabled. *See id.* § 416.920(a)(4)(iv). If a claimant cannot return to their previous work, then the ALJ proceeds to step five. *See id.* § 416.920(a)(4)(v). There, the ALJ must determine, based on the claimant's RFC, "age, education, and work experience," whether the claimant can find any other work in the national economy. *Id.* If the claimant cannot adjust to other work, then they are disabled. *See id.*

B.    Factual Background

1.    *Medical Evidence*

In September 2021, Plaintiff was hospitalized for treatment of his diabetes. *See* AR 266. The need for hospitalization likely resulted from his noncompliance with medication and poor diet. *See* AR 266. The hospital discharged him following a brief stay with instructions to continue his diabetes treatment plan. *See* AR 268. Between September 2020 and February 2023, Plaintiff saw Dr. Jason Yoon for his primary care appointments. *See* AR 323–85. During several of these visits, Plaintiff reported poor compliance with his diabetes treatment plan but did not report any active diabetes symptoms. *See* AR 360, 369. On multiple occasions, Plaintiff's test results showed elevated blood sugar levels, indicating uncontrolled diabetes. *See* AR 358, 367, 375, 383. Plaintiff did not report any back pain during these visits. *See* AR 324–84. Repeated examinations between 2020 and 2022 of his lumbosacral spine also revealed no abnormal findings. *See* AR 326–79.

In August 2022, Plaintiff saw NP Vashtina Ellison-Ruddock for a consultative examination. *See* AR 311–18. Plaintiff reported experiencing "on and off mild achy lower back pain," with the pain worsening to a 3 to 4 out of 10. AR 311. The pain was "aggravat[ed] by only prolonged sitting" AR 311. He also reported prior, but not current, use of pain medication for his back pain. *See* AR 311. Additionally, Plaintiff reported "diabetes without complications since

3

2018" and stated that he took diabetes medicine twice daily. AR 311. Regarding his history of seizures, Plaintiff denied having any seizures since 2020. *See* AR 311. He stated that he did not need help with his daily activities, which included cooking, light cleaning, laundry, and shopping. *See* AR 312. Plaintiff's physical examination revealed no abnormal findings. *See* AR 312–14. X-rays of his lumbosacral spine showed moderate and severe degenerative disc disease, as well as mild vertebrae displacement. *See* AR 314. NP Ellison-Ruddock concluded that Plaintiff "ha[d] no physical limitations." AR 314. In August 2022, State agency medical consultant Dr. Eduardo Haim reviewed the record and found that Plaintiff's physical impairments restricted him to work at the "medium" exertional level with the need to "avoid even moderate exposure" to environmental hazards. AR 48–52. Dr. Haim relied on Plaintiff's lumbar spine x-ray, which revealed moderate to severe degenerative disc disease and mild vertebrae displacement, as well as his history of seizures. *See* AR 51.

### 2.    *Social Security Administration Review*

On September 16, 2021, Plaintiff filed for SSI. *See* AR 151. He claimed that his disability began on July 15, 2020. *See* AR 43. On February 10, 2022, the State agency denied Plaintiff's application, and later on reconsideration. *See* AR 45, 52. On August 9, 2023, the ALJ held a hearing. *See* AR 30. At the hearing, Plaintiff testified about his pain and symptoms. *See* AR 34–38. Plaintiff stated that he had lower back pain that prevented him from "walk[ing] far." AR 34–35, 37. He described being able to stand for only "five to ten minutes" before needing to sit down to take a break. AR 38. He further stated that he took medication for his back pain twice a day but had not sought treatment since approximately a year before the hearing. *See* AR 35. Additionally, he stated that he took medicine for his diabetes. *See* AR 37. He claimed that he sat on his couch and watched television during the day. *See* AR 36–37. He also claimed that his adult children

helped with groceries, meal preparation, and laundry. *See* AR 36. Additionally, he reported that he used medical transportation to pick up his prescriptions and used the elevator in his apartment to retrieve delivered medication. *See* AR 36. After Plaintiff's testimony, the ALJ asked the Vocational Expert ("VE") about a hypothetical individual with Plaintiff's age and education, and who had the ability to perform a reduced range of light work. *See* AR 39–40. The VE explained that such an individual could find employment, such as: a final inspector, an assembler of electrical accessories, and an information clerk. *See* AR 40.

On November 1, 2023, the ALJ denied Plaintiff's claim. *See* AR 14. At step one, the ALJ found that Plaintiff had not engaged in a substantial gainful activity since January 3, 2022. *See* AR 19. At step two, the ALJ concluded that his "degenerative disc disease of the lumbar spine, diabetes [], and obesity" were severe impairments. AR 19.

At step three, the ALJ determined that Plaintiff's impairments did not meet the criteria in Appendix 1. *See* AR 20. The ALJ dismissed his claim for his back impairment because "there [was] no evidence of listing level signs, symptoms, and objective findings on imaging or in operative reports and impairment related limitations of musculoskeletal functioning with a documented medical need for an assistive device or a related . . . gross movements." AR 20. The ALJ also dismissed his claim for his diabetes because "there [was] no evidence that his diabetes as [sic] caused signs or symptoms that [met] the requirements of a listing for another body system." AR 20. Additionally, the ALJ stated that Plaintiff's obesity was "considered in conjunction with [his] other impairments" but that "there [was] no evidence that his weight ha[d] increased the

severity of his co-existing conditions to the extent that the combination of impairments medically equal[ed] a listing in any body system." AR 20.

At step four, the ALJ used a two-part process to determine Plaintiff's RFC. *See* AR 20. First, the ALJ found that his impairments reasonably could produce his symptoms. *See* AR 22. Second, the ALJ found that the record did not support the alleged "intensity, persistence and limiting effects of [his] symptoms." AR 22. The ALJ concluded that Plaintiff could perform light work, except that:

> [I]n an eight hour workday, he can sit for six hours while alternating to a standing position for ten minutes during every hour of sitting while remaining on task; and can stand and/or walk for six hours with the ability to alternate to sitting for five minutes during every hour of standing and/or walking while remaining on task. He can lift, carry, push, and pull 20 pounds occasionally and ten pounds frequently. In addition, he can occasionally stoop, crouch, and climb ramps, stairs, ladders, ropes, or scaffolds. He can occasionally operate a motor vehicle.

AR 20. In formulating the RFC, the ALJ relied on the opinions of medical professionals who examined Plaintiff, Plaintiff's own statements, and Plaintiff's medical records. *See* AR 21–24. The ALJ also determined that Plaintiff had no past relevant work. *See* AR 24.

At step five, the ALJ found that Plaintiff could find another job in the national economy. *See* AR 24–25. The ALJ acknowledged that Plaintiff was unable to "perform the full range of light work" due to "additional limitations" in the RFC. AR 24–25. The ALJ referred to the VE's testimony regarding a hypothetical individual with Plaintiff's age, education, work experience, and RFC, who could work as a final inspector, electrical accessories assembler, and information clerk. *See* AR 25. The ALJ found the VE's testimony credible. *See* AR 25. Thus, the ALJ determined that Plaintiff was not disabled. *See* AR 25.

On August 5, 2024, Plaintiff filed his complaint in this court. *See* Compl. 3, ECF No. 1. On October 27, 2024, Judge Friedrich, with the parties' consent, referred this case to the

undersigned for all purposes. *See* Min. Order (Oct. 27, 2024). Pending before this court are Plaintiff's Motion for Judgment of Reversal and the Defendant Social Security Commissioner's Motion for Judgment of Affirmance. *See* Pl.'s Mot.; Def.'s Mot. J. Affirm. & Opp'n Pl.'s Mot. J. Reversal ("Def.'s Mot."), ECF No. 11.

## II.    LEGAL STANDARD

When reviewing the SSA's disability determination, the district court acts in an appellate role and must uphold the determination "if it is supported by substantial evidence and is not tainted by an error of law." *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Butler* 353 F.3d at 999 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The standard is highly deferential, requiring "more than a scintilla," but is satisfied by "something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365–66 (D.C. Cir. 2003) (quoting *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002). As such, the "reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment 'concerning the credibility of the evidence with its own.'" *Goodman v. Colvin*, 233 F. Supp. 3d 88, 104 (D.D.C. 2017) (quoting *Crosson v. Shalala*, 907 F. Supp. 1, 2 (D.D.C. 1995)).

That said, the ALJ must establish a "logical bridge" between their conclusions and the evidence so that a reviewing court "'may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review.'" *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)). "[T]he plaintiff bears the burden of demonstrating that the Commissioner's decision was not based on substantial

evidence or that incorrect legal standards were applied." *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C 2015) (internal quotations marks and brackets omitted).

## III.   DISCUSSION

Plaintiff raises two challenges to the ALJ's decision. *See* Pl.'s Mot. at 2. First, he argues that the ALJ failed to properly evaluate his allegations of pain and dysfunction. *See id.* at 3. Second, he claims that the ALJ's RFC finding was not supported by substantial evidence. *See id.* at 4.

### A.   Plaintiff's Allegations of Pain and Dysfunction

An ALJ may find a claimant's allegations of pain and dysfunction "inconsistent with the overall evidence of record" when "the frequency or extent of the treatment sought by [the claimant] is not comparable with the degree of the [claimant's] subjective complaints, or if the [claimant] fails to follow prescribed treatment." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017). In doing so, however, the ALJ must "consider[] possible reasons [the claimant] may not comply with treatment or seek treatment consistent with the degree of [their] complaints." *Id.*; *see Goodman*, 233 F. Supp. 3d at 108 (finding that the ALJ correctly compared the claimant's subjective complaints of pain with her failure to follow prescribed treatments, after considering reasonable explanations for her noncompliance, including lack of health insurance); *Tiana O. v. Kijakazi*, No. 20-cv-2051, 2023 WL 5348747, at *11 (D.D.C. Aug. 21, 2023) (finding that the ALJ incorrectly evaluated the claimant's subjective complaints about her mental health limitations, in part because the ALJ failed to consider reasons for her treatment noncompliance). This inquiry is required only if the ALJ "conclude[s] that [the claimant] would be deemed disabled

and eligible for benefits but for [their] noncompliance with treatment." *Darlene M. v. Kijakazi*, No. 20-cv-1817, 2021 WL 6841641, at *23 (D.D.C. Sept. 3, 2021).

1.    *Plaintiff's Noncompliance with Treatment*

*Darlene M.* clarifies when an inquiry into a claimant's noncompliance with treatment is warranted. 2021 WL 6841641, at *23. In *Darlene M.*, the ALJ found at step three that the claimant's impairments did not meet or equal the severity of any listed impairments, largely because medical testing, treatment notes regarding claimant's physical condition, and claimant's own reports of her daily activities were inconsistent with her "statements as to the intensity, persistence, and limiting effects of [her] symptoms." *Id.* at *6. The court found that the ALJ properly discounted the claimant's subjective testimony concerning the limiting effects of her symptoms because "the ALJ noted [the claimant's] noncompliance with treatment merely as a factor" in their decision. *Id.* at *23. Critically, the ALJ did not make claimant's noncompliance the only thing barring relief. *See id.*

Similarly, the ALJ here appropriately discounted Plaintiff's subjective testimony concerning the limiting effects of his symptoms. *See* AR 20–23. As in *Darlene M.*, the ALJ "noted [Plaintiff's] noncompliance with treatment merely as a factor" in reaching his conclusion. 2021 WL 6841641, at *23; *see* AR 21–23. The ALJ did not conclude that Plaintiff would have been eligible "but for [his] noncompliance with treatment." *Darlene M.*, 2021 WL 6841641, at *23; *see* AR 21–23. The ALJ found the objective medical evidence, including physical examinations and medical opinions, as well as Plaintiff's own prior statements about his daily activities inconsistent

with his "statements as to the intensity, persistence, and limiting effects of [his] symptoms." *Darlene M.*, 2021 WL 6841641, at *6; *see* AR 20–23.

First, the ALJ noted that physical examinations of Plaintiff's lumbosacral spine revealed no abnormal findings. *See* AR 22. "While 'an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain . . . it is a factor that the ALJ can consider in his credibility analysis.'" *Ragudo v. Saul*, 411 F. Supp. 3d 1125, 1134 (S.D. Cal. 2019) (quoting *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)). Such medical evidence includes "physical examinations" of a claimant's "lumbar spine." *Id.* at 1134–35 (finding that the ALJ properly considered plaintiff's relatively normal physical examinations findings in his determination that plaintiff's testimony was not credible).

Second, that Plaintiff did not attribute any functional limitations to his diabetes at his consultative examination and stated he had no complications from diabetes. *See* AR 21–22, 311. An ALJ can consider a claimant's failure to "complain[] of any issues concerning his [health condition]" during medical visits as a basis for discrediting the claimant's "current claim of ongoing, disabling symptoms." *Petty v. Colvin*, 204 F. Supp. 3d 196, 210 (D.D.C. 2016). Defendant claims that Plaintiff's "noncompliance with his diabetes medication is irrelevant to his ability to work according to his own testimony[,]" where he stated that "his diabetes did not prevent him from working; only his back pain allegedly did." Def.'s Mot. at 12. Plaintiff refutes Defendant's characterization of his testimony, arguing that "Plaintiff testified that in addition to his back, he also had diabetes" and "reported that he was not able to work due to diabetes." Pl.'s Resp. Def.'s Mot. J. Affirm. ("Pl.'s Resp.") 2, ECF No. 13. This line of argumentation is

unnecessary because the ALJ ultimately found Plaintiff's diabetes to "contribute[] to limiting [Plaintiff] to light exertional work." AR 23.

Third, Plaintiff's daily activities included going on frequent walks, choosing not to use the elevator at home, and requiring no assistance with cleaning, cooking, shopping, or doing laundry. *See* AR 311–12. "An ALJ may assess a claimant's credibility by comparing [the claimant's] subjective complaints of pain with [their] statements regarding [their] daily activities." *Goodman*, 233 F. Supp. 3d at 107–08. (finding that the ALJ appropriately considered the plaintiff's ability to "perform numerous regular tasks and household chores[,]" including cooking, cleaning, and grocery shopping, as a basis for discounting her subjective complaints of pain); *see, e.g.*, *Ali v. Colvin*, 236 F. Supp. 3d 86, 96 (D.D.C. 2017) (finding that the ALJ appropriately considered the plaintiff's daily activities of "preparing meals, house and yard work, shopping by mail and computer, handling money, watching TV and reading" as a basis for discounting parts of her testimony).

*Tiana O.* illustrates when an ALJ improperly relies on a claimant's noncompliance with treatment in determining disability benefits. 2023 WL 5348747. In *Tiana O.*,[2] the ALJ found at step three that the claimant's noncompliance with medication and treatment suggested that his "symptoms were [not] as severe as alleged" and there was "no evidence of financial restrictions, side effects, or other issues that prevented the claimant from continuing treatment." *Id.* at *12. The court held that the ALJ erred in finding the claimant's subjective complaints were inconsistent with his failure to seek treatment because the ALJ "misstated the record as to [the claimant's]

---

[2] The court's ruling in *Tiana O.* primarily addressed the ALJ's findings regarding the claimant's mental impairments and related inconsistent treatment and noncompliance. 2023 WL 5348747. But the underlying legal principle remains the same for physical impairments where inconsistent treatment and noncompliance may be a feature of the condition itself and contribute to worsening symptoms. *See id.* at *11 (citing 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00(G)(2)(b)).

noncompliance with treatment." *Id.* The record demonstrated that the claimant had attended several treatment appointments. *See id.* And the ALJ "failed to adequately consider the reasons underlying [the claimant's] noncompliance with treatment." *Id.*

In contrast, the ALJ here did not conclude that if Plaintiff's "symptoms were as severe as alleged[,]" he would have complied with his diabetes treatment plan. *Id.*; *see* AR 21. Rather, the ALJ determined that Plaintiff's diabetes was a severe impairment in part because of Plaintiff's "chronic non-compliance with treatment." AR 23. The ALJ also did not conclude that there was nothing "that prevented [Plaintiff] from continuing treatment." *Tiana O.*, 2023 WL 5348747, at *12; *see* AR 21–23. Furthermore, unlike *Tiana O.*, the treatment records here did not suggest that the ALJ "misstated the record as to [Plaintiff's] noncompliance with treatment." 2023 WL 5348747, at *12; *see* AR 21–23. The ALJ correctly cited medical records that demonstrated: Plaintiff's consistently poor compliance with his diabetes treatment plan, including self-reports; elevated blood sugar readings; and a prior diabetic episode. *See* AR 23. The ALJ did not "rely solely on [Plaintiff's] treatment noncompliance" to conclude that Plaintiff's diabetes failed to meet the severity of a listed impairment. *Tiana O.*, 2023 WL 5348747, at *11. It is true the ALJ did not consider the reasons underlying Plaintiff's noncompliance with treatment. *See* AR 21–23. But, because the ALJ did not "rely solely" on noncompliance in denying disability benefits, the ALJ was not required to "consider[] possible reasons [Plaintiff] may not comply with treatment." SSR 16-3p, 2017 WL 5180304, at *9; *Tiana O.*, 2023 WL 5348747, at *11. Instead, the ALJ looked to

various sources of information to make his conclusion. *See* AR 21–25. This distinguishes the present case from *Tiana O*. 2023 WL 5348747.

        B.     <u>Plaintiff's RFC</u>

When formulating a claimant's RFC, an ALJ must provide a comprehensive and detailed narrative discussion that:

> Contain[s] a thorough discussion and analysis of the objective medical and other evidence, including the [claimant's] complaints of pain and other symptoms and the [ALJ's] personal observations, if appropriate; . . . a resolution of any inconsistencies in the evidence as a whole; and . . . a logical explanation of the effects of the symptoms, including pain, on the [claimant's] ability to work.

SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ's narrative discussion must cite specific evidence in the record and "explain[] which evidence [the ALJ] found credible and why." *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 18 (D.D.C. 2009); *see id.* In other words, an ALJ may not "simply list[] all of the evidence without clearly explaining which particular pieces of evidence led [them] to [their] conclusion." *Lane-Rauth*, 437 F. Supp. 2d at 67 (finding the narrative discussion insufficient where the ALJ listed evidence without explaining its support for his conclusion or reasons for discounting contrary evidence). Ultimately, a narrative discussion is sufficient when it "strikes the proper balance between" conflicting evidence in the record, even if the ALJ "could have been clearer in articulating the support for [the] precise limitation." *Roshelle S. B. v. Kijakazi*, No. 21-cv-2842, 2022 WL 4448924, at *4 (D. Md. Sept. 23, 2022).

        1.     *The ALJ's Evaluation of Plaintiff's Credibility*

*Pinkney* provides a baseline for what an ALJ needs to do when explaining the rationale behind their RFC determination. 675 F. Supp. 2d at 18. There, the ALJ found that the claimant had the RFC to perform work at the medium exertional level, in part because "the objective medical evidence" and "[the claimant's] testimony at the hearing" were inconsistent with the claimant's

alleged "degree of difficulty performing . . . activities of daily living." *Id.* at 17. The ALJ supported this finding by citing specific medical evidence, including test results and professional opinions, that indicated the claimant's impairments were "only moderately limiting." *Id.* at 16–17.

Like in *Pinkney*, the ALJ here "did more than merely list the evidence." *Id.* at 17–18; *see* AR 20–24. Specifically, the ALJ here "explained which evidence he found credible and why" in determining Plaintiff's RFC. *Pinkney*, 675 F. Supp. 2d at 17–18; *see* AR 20–24. In his narrative discussion, the ALJ addressed how Plaintiff's testimony regarding his functional limitations conflicted with both the medical examinations and his prior statements about his daily activities. *See* AR 22. For instance, the ALJ noted that during Plaintiff's consultative examination, Plaintiff reported mild lower back pain worsened by prolonged sitting, while Plaintiff also stated that he regularly took walks and managed chores like cooking and cleaning independently. *See* AR 21–22. But Plaintiff's testimony presented a contrary picture: Plaintiff stated that he watched television all day and relied on his adult children to grocery shop and cook for him. *See* AR 36. The ALJ found Plaintiff's statements at the consultative examination more credible, in part, because Plaintiff's testimony was "inconsistent with the treatment record[,] which regularly document[ed] unremarkable physical examination results[,]" and "the objective [medical] findings at the . . . consultative examination during which. . . [Plaintiff] had no significant findings." AR 22. Such "[c]redibility determinations are 'solely within the realm of the ALJ.'" *Moore v. Berryhill*, 313 F. Supp. 3d 275, 283 (D.D.C. 2018) (quoting *Callaway v. Berryhill*, 292 F. Supp. 3d 289, 297 (D.D.C. 2018)).

Furthermore, the ALJ relied on the opinions from NP Ellison-Ruddock and Dr. Haim. *See* AR 21, 23. The ALJ is not beholden to these medical opinions when "assessing and determining [Plaintiff's] RFC" but is "nonetheless required to consider and evaluate any such [medical

opinions] as opinion evidence." *Goodman*, 233 F. Supp. 3d at 105 (finding that the ALJ properly afforded great weight to the State agency medical consultant's RFC assessment). Both medical professionals concluded that Plaintiff had no significant physical limitations and could perform work at the medium exertional level. *See* AR 21, 23. The ALJ credited this opinion evidence. *See* AR 23. In fact, this was the only credible opinion evidence in the record. *See* AR 23–24. Plaintiff "point[ed] to no specific evidence beyond [his] own testimony that would contradict the ALJ's finding." *Goodman*, 233 F. Supp. 3d at 111; *see* Pl.'s Mot. at 4–7; Pl.'s Resp. at 3–4. Thus, the ALJ's RFC finding is supported by substantial evidence. *See Goodman*, 233 F. Supp. 3d at 111.

Despite these findings, the ALJ still acknowledged the physical limitations imposed by Plaintiff's degenerative disc disease. *See* AR 23–24. "[W]hen analyzing the narrative discussion, courts in this Circuit have considered an ALJ's imposition of limitations that are more restrictive than opined by consultative examiners as a factor that can weigh in the Commissioner's favor." *Katrina M. v. O'Malley*, 752 F. Supp. 3d 1, 10 (D.D.C. 2024) (citing *Said S. v. O'Malley*, No. 22-cv-362, 2024 WL 2152737, at *10 (D.D.C. May 14, 2024)). Here, the ALJ viewed the overall evidence and concluded that a reduction to a range of light exertional work with several postural limitations was more reasonable than the less restrictive limitations put forth by the medical experts. *See* AR 23–24. This more restrictive limitation "weigh[s] in the Commissioner's favor." *Katrina M.*, 752 F. Supp. 3d at 10.

### 2.    *The ALJ's Sit-stand Restriction*

*Roshelle S. B.* demonstrates the level of explanation and evidence that courts have deemed adequate to support a sit-stand restriction in the RFC. 2022 WL 4448924. In *Roshelle S. B.*, the ALJ found that the claimant had the RFC to perform sedentary work, with the need to sit for about 5 minutes after every 15 to 20 minutes of standing or walking. *See id.* at *2. The court rejected the

claimant's argument that the ALJ failed to adequately explain the basis for this sit-stand option. *See id.* at *3. The court noted that the ALJ "could have been clearer in articulating the support for [his] precise limitation"; however, the court concluded that the ALJ's findings "str[uck] the proper balance between [the claimant's] hearing testimony" regarding her inability to walk and "[the claimant's] documented history of improved mobility." *Id.* at *4. The RFC assessment also reflected the claimant's own statements about being able to walk without the use of a cane. *See id.* Finally, the ALJ "cited repeatedly to records summarizing [the claimant's] ankle and lower leg limitations" as well as "medical evaluations and imaging that justified the limitations." *Id.*

Similarly, the ALJ's RFC assessment here "str[uck] the proper balance between [Plaintiff's] hearing testimony" regarding his difficulty walking or performing household chores like cooking and cleaning independently, and "[Plaintiff's] documented history" of normal physical examination findings, lack of treatment, and few complaints about active symptoms. *Id.*; *see* AR 20–24. The ALJ's RFC assessment reflected Plaintiff's prior statements about not needing assistance with his daily activities. *See* AR 21. Furthermore, the ALJ "cited repeatedly to records summarizing [Plaintiff's postural] limitations" as well as "medical evaluations and imaging that justified the limitations [in the RFC]." *Roshelle S. B.*, 2022 WL 4448924, at *4; *see* AR 20–24. For example, the ALJ's RFC "partially incorporated" NP Ellison-Ruddock's and Dr. Haim's opinions that Plaintiff had no physical limitations and could perform work at the medium exertional level. *Thomas v. Astrue*, 677 F. Supp. 2d 300, 308 (D.D.C. 2010); *see* AR 22–23. This does not mean that the ALJ dismissed Plaintiff's "subjective pains complained of" or his x-rays showing moderate to severe degenerative disc disease. *Thomas*, 677 F. Supp. 2d at 308; *see* AR 23. Instead, the ALJ gave Plaintiff "the benefit of the doubt by limiting [him] to light work[,]" despite the absence of abnormal findings in Plaintiff's physical examinations. *Thomas*, 677 F.

Supp. 2d at 308; *see* AR 22–23. The sit-stand option in the ALJ's RFC also provided Plaintiff with

an "accommodation for [his] aggravated [back] pain caused by [prolonged sitting]." *Thomas*, 677

F. Supp. 2d at 308; *see* AR 23. Additionally, the ALJ noted the VE's testimony that "an individual

with . . . [Plaintiff's] age, education, work experience, and [RFC]" could work as a final inspector,

electrical accessories assembler, and information clerk. AR 25. These jobs account for the sit-stand

option in the RFC by allowing Plaintiff to perform them "sitting or standing at-will." AR 25.

Plaintiff argues that the ALJ "failed to explain his basis for his precise sit/stand option" in

the RFC by not citing any medical opinion that supported his finding. Pl.'s Mot. at 5–6. Plaintiff

is incorrect. "While the ALJ did not cite a medical opinion that laid out the exact RFC at which he

arrived, 'sufficient information has been provided for the Court to understand [his] reasoning.'"

*Callaway*, 292 F. Supp. 3d at 296 (quoting *Grant v. Astrue*, 857 F. Supp. 2d 146, 154 (D.D.C.

2012)); *see* AR 23–24. The ALJ here noted the contradictory evidence in the record that tended to

undermine Plaintiff's testimony about "need[ing] to sit down to take a break" after "five to ten

minutes" of standing. AR 38. Specifically, the ALJ pointed to "the mostly normal medical

evidence in the record, and gave weight to the views of experts whose findings were consistent

with that objective medical evidence—all of which counsels for a more optimistic RFC than those

estimated by" Plaintiff's testimony. *Callaway*, 292 F. Supp. 3d at 296; *see* AR 23. Thus, in the

absence of objective medical evidence corroborating Plaintiff's subjective complaints of pain, the

ALJ's inclusion of a sit-stand option accommodating Plaintiff's reported limitations is more than

adequate. *See Callaway*, 292 F. Supp. 3d at 296.

Ultimately, the ALJ provided a "thorough discussion and analysis of the objective medical

and other evidence." SSR 96-8p, 1996 WL 374184, at *7; *see* AR 20–24. His opinion provided "a

resolution of any inconsistencies in the evidence as a whole" and "a logical explanation of the

effects of the symptoms . . . on [Plaintiff's] ability to work." SSR 96-8p, 1996 WL 374184, at *7; *see* AR 20–24. The ALJ also "explained which evidence he found credible and why[,]" rather than merely listing the record evidence and stating the RFC in a conclusory manner. *Pinkney*, 675 F. Supp. 2d at 18; *see* SSR 96-8p, 1996 WL 374184, at *7; AR 20–24. In doing so, the ALJ's RFC finding "str[uck] the proper balance between" conflicting evidence in the record. *Roshelle S. B.*, 2022 WL 4448924, at *4; *see* AR 20–24. The ALJ established a "logical bridge" between his conclusions and the evidence. *Lane-Rauth*, 437 F. Supp. 2d at 67. That is to say, the ALJ's RFC "more than adequately accounts for . . . [Plaintiff's] diabetes and lumbar spine impairment." AR 23.

## IV.    CONCLUSION

For the foregoing reasons, the Court will DENY Plaintiff's Motion for Judgment of Reversal and GRANT Defendant's Motion for Judgment of Affirmance.

Date: August 26, 2025

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**FITZGERALD DENNISON, SR.,**

**Plaintiff,**

    **v.**

**MARTIN J. O'MALLEY,**
*Commissioner of Social Security*

**Defendant.**

          **No. 24-cv-2301-ZMF**

---

**<u>ORDER</u>**

Upon consideration of Plaintiff's Motion for Judgment of Reversal and Defendant's Motion for Judgment of Affirmance, it is hereby ORDERED that Defendant's Motion for Judgment of Affirmance is GRANTED and Plaintiff's Motion for Judgment of Reversal is DENIED.


_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE